

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: July 18, 2017.**

_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 17-50814-CAG |
| | § | |
| JOSE FRANCISCO ORTIZ-PEREDO AND | § | |
| LILIA GUADALUPE LOPEZ, | § | |
| | § | CHAPTER 13 |
| Debtors. | § | |

### MEMORANDUM OPINION AND ORDER GRANTING CHAPTER 13
### TRUSTEE'S OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN
### (ECF NO. 16)

Came on to be considered the above-numbered bankruptcy case, and, in particular, the Chapter 13 Trustee's Objection to Confirmation of Chapter 13 Plan ("Objection") (ECF No. 16).[1] The Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. § 1408(1). This matter is referred to this Court under the District's Standing Order of Reference. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(L) (confirmation of plans) in which the Court may enter a final order. The Court notes that, under the Supreme Court's decision in ***Bullard v. Blue Hills Bank***, 135

---

[1] "ECF No." denotes electronic court filing number and represents the court filing number where the document appears on the Court's electronic docket sheet.

S. Ct. 1686 (2015), this Court has the authority to hear and enter orders regarding a debtor's chapter 13 plan; but that an order denying confirmation of a chapter 13 plan is not a final order unless the bankruptcy case is also dismissed. The Court finds that this is a contested matter as defined under Fed. R. Bankr. P. 9014. As such, the Court makes the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052. The Court took this matter under advisement and finds that the Chapter 13 Trustee's (the "Trustee") Objection should be GRANTED.

## BACKGROUND

Debtors filed a chapter 13 petition for relief on April 4, 2017 (ECF No. 1). *See* 11 U.S.C. § 101 *et seq*. On the same day, Debtors filed their Schedules, Statement of Financial Affairs ("SOFA"), and chapter 13 plan (ECF Nos. 1 and 2). Debtors filed their Amended Schedules, SOFA, and chapter 13 plan on April 19, 2017 (ECF Nos. 19-21). Pursuant to the Chapter 13 Form Plan used in the San Antonio Division, Debtors propose to pay 100% of all of their allowed administrative, secured, and priority claims; and propose to pay 23% of their nonpriority unsecured claims (ECF No. 22, p. 7).[2] The proposed Plan payment is $1,420.00 per month and the Plan length is 60 months (*Id*. at pp. 8-9).

Trustee filed her Objection on May 30, 2017, arguing that Debtors do not meet the Code's best efforts test[3] because the Debtors are not including proceeds from a settlement

---

[2] The Trustee stated at the confirmation hearing on the Debtors' plan that the distribution is 7%.

[3] "Section 1325(b) is commonly called the 'best efforts' requirement for confirmation and first became part of the Bankruptcy Code with the amendments passed in 1984. It was designed to deal with the issues created by plans that, either because of the debtor's circumstances or choice in drafting, would yield little or nothing for unsecured creditors. The idea was that when proposing a chapter 13 plan a debtor should be serious about repaying creditors and yet still permit confirmation of minimal or zero distribution plans if that was all the debtor could afford—hence the concept of a debtor's 'best efforts.'" *In re Hight-Goodspeed*, 486 B.R. 462, 463 (Bankr. N.D. Ind. 2012).

of a lawsuit as part of their disposable income to pay unsecured creditors.[4] Debtors counter

Trustee's argument by asserting that the lawsuit was properly exempted, and, as exempt

property, cannot be used to satisfy unsecured claims. § 522(c) (2017).[5]

**FINDINGS OF FACT**

No evidence was taken at the hearing and both parties stipulated as to the operative

facts. Debtors listed on their original Schedule "C" a "Total Safety worker's compensation

filed in 2014 – pending" (ECF No. 1, p. 21). As such, the claim for worker's compensation

is a pre-petition cause of action. Debtors' amended their Schedule "C" on June 19, 2017,

to list a "Worker's Compensation Retaliation Case" in the amount of $8,632.85 and

exempted under § 522(d)(5) (ECF No. 20, p. 5). Debtors filed their Application to Approve

Settlement and Appoint Special Counsel and Approved Special Counsel's Fees and

Request for Attorney's Fees Nunc Pro Tunc on June 30, 2017 ("Application") (ECF No.

24). The Application requests Court approval of Debtor Jose Francisco Ortiz-Peredo's

worker compensation retaliation claim and payment to both bankruptcy and special

counsel. Therefore, the lawsuit settlement proceeds are post-petition income. At the time

of this Memorandum Opinion, no objection has been filed to the claim of exemption and

none is expected. As such, pursuant to Fed. R. Bankr. P. 4003(b)(2), the exemption is

allowed unless an objection to the exemption is filed within 30 days after the amended

exemption is filed. *See Taylor v. Freeland & Kronz*, 503 U.S. 638, 643-44 (1992) (noting

that exemption in property is conclusively proven once 30 period under Rule 4003(b) has

---

[4] This objection was not contained in the Trustee's filed Objection, but was raised orally at the confirmation hearing and in response to the Debtors' amended plan filed 3 days prior to the confirmation hearing.

[5] "(c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except— …" Unless otherwise noted, all references are to 11 U.S.C. § *et seq.*

passed even if there no colorable basis to claim the exemption). Further, there was no Debtor testimony as to whether the lawsuit settlement proceeds were reasonably necessary for the maintenance and support of the debtors or dependents of the debtors.[6]

## CONCLUSIONS OF LAW

Debtors argue that because the lawsuit and the proceeds are properly exempted under § 522(d)(5), the proceeds are no longer property of the bankruptcy estate. *See **In re Graham***, 258 B.R. 286, 288 (Bankr. M.D. Fla. 2001) (finding that personal injury settlement received after the commencement of a case is property of the estate under § 541 and § 1306(a)(1) absent a proper claim of exemption under § 522).[7] The majority of courts that have considered the issue of whether exempt income is nonetheless disposable income in chapter 13 and subject to distribution to creditors find that it is. *See **In re Launza***, 337 B.R. 286, 289 (Bankr. N.D. Rex. 2005) (collecting cases that support the majority view, including opinions from the Eighth and Sixth Circuits, plus the Ninth Circuit B.A.P.). Debtors further argue that under the Fifth Circuit's holding in ***Viegelahn v. Frost***, that the Fifth Circuit implicitly stated that once property is exempt, it cannot be used for payment to creditors. 744 F.3d 384, 386-87 (5th Cir. 2014). Trustee asks that this Court follow the majority position and apply ***Hamilton v. Lanning***, 560 U.S. 505 (2010), to find that

---

[6] Section 1325(b)(2)(A)(i) states that: For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended—
(A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed.

[7] 11 U.S.C. 1306(a)(1) states that: (a) Property of the estate includes, in addition to the property specified in section 541 of this title—
(1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

4

anticipated increases in income must be included in projected disposable income test. [8]

The minority position of courts is best explained in ***In re Graham***.[9] In ***Graham***, one of the debtors sustained bodily injuries from an automobile accident post-petition. 258 B.R. at 287. The debtors exempted the lawsuit under Florida state exemptions and no party objected. ***Id***. at 288.[10] The debtors' plan was confirmed, and, after the personal injury lawsuit was settled, the chapter 13 trustee moved to modify the plan to include the settlement proceeds. ***Id***. The trustee argued that the lawsuit proceeds were property of the estate under § 1306 and disposable income under § 1325(b). ***Id***. As such, the court had to decide which provision governed disposition of the funds: § 522(c), which would make the settlement not liable for pre-petition debts, or § 1325(b) which states in relevant part that all the debtor's projected disposable income is applied to make payments under the plan.

The ***Graham*** court began its analysis by noting that exemptions function the same in chapter 7 and 13 because exemptions are listed in chapter 5 of the Code. ***Id***. at 290. Nonetheless, the court recognized that exemptions serve different purposes in chapters 7 and 13. ***Id***. Exemptions protect certain assets from forced sale in chapter 7 while in chapter 13, debtors keep all of their assets and surrender their income to their creditors, but for meeting a liquidation analysis for confirmation purposes. ***Id***. As such, courts have

---

[8] Section 1325(b)(1) states that:
If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
(B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.
[9] As noted in ***Graham***, the bankruptcy court was bound by Eleventh Circuit precedent in ***In re Gamble***, 168 F.3d 442 (11th Cir. 1999). The Eleventh Circuit held that "the plain language of the bankruptcy code and precedent from this court are clear that exempt property is no longer part of the bankruptcy estate, and is available for the debtor's use." ***Id***. at 445. (citations omitted). Debtors make a similar argument here.
[10] 11 U.S.C. § 522(l) states in pertinent part that: The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section. . . . Unless a party in interest objects, the property claimed as exempt on such list is exempt.

recognized an incongruity regarding exemptions that allow a chapter 13 debtor to keep "disposable," yet exempt income and maintain all of the debtor's assets versus a chapter 7 debtor who surrenders all of debtor's non-exempt assets. As such, it appears that exemptions serve little purpose in chapter 13. *Id*.

The *Graham* court noted that, under the minority view, that once property is exempted, the plain language of § 522(c) precludes it from being used to pay pre-petition debts. *Id*. Further, the minority view holds that exempt property under § 522(c), regardless of form, is protected from being used to pay pre-petition debts and cannot be ignored for purposes of defining disposable income under § 1325(b). *Id*. (citation omitted). Additionally, a number of courts, including the Eleventh Circuit in *Gamble*, have reasoned that the plain language of § 522(c), coupled with the Supreme Court's holding in *Taylor* that even an invalid claim of exemption removes property from the estate, support the conclusion that once property is exempted it cannot be brought back into the estate to pay pre-petition debts. *Graham*, 258 B.R. at 291; *Gamble*, 168 F.3d at 144-45.

The Debtors also assert that the Fifth Circuit's holding in *Viegelahn v. Frost* supports their assertion that once property is exempted, it cannot be used to pay pre-petition debts. The issue in *Frost* was whether in a chapter 13 case proceeds from the sale of a homestead that were not reinvested in a subsequent home within six months became post-petition property of the estate under § 1306. Under Texas law, a homeowner who sells a homestead must reinvest the proceeds of the sale in a new homestead within six months of sale or the proceeds lose their exempt status. Tex. Prop. Code Ann. Sec. 41.001(c) (2017); *Frost*, 744 F.3d at 385. The debtor in *Frost* did not reinvest the proceeds and the chapter 13 trustee argued that the proceeds were post-petition income under § 1306. *Id*. at 385. The debtor in *Frost* argued that the proceeds were exempt under § 522(c) and could not be used

to satisfy creditor claims. Additionally, the Fifth Circuit previously stated in *In re Zibman*, 268 F.3d 298, 301 (5th Cir. 2001), the general rule that exemptions are determined on petition date and do not subsequently lose their exempt status (known as the "snapshot rule"), and that once the exemption was allowed on the petition date, the exemption could not subsequently be lost. *Frost* 744 F.3d at 386.

The Fifth Circuit found that the purpose of the proceeds exemption statute was to allow the claimant to invest the sale proceeds in another home, not to preserve the proceeds' exempt character. *Id*. at 388 (citation omitted). The Fifth Circuit held that the debtor's interest in homestead changed from an unconditionally exempted interest in real property to a conditionally exempted interest in proceeds from the sale of the property. *Id*. at 389. The Court finds that *Frost* does not apply to the case at bar because the temporal aspect of the exemption in *Frost* does not apply to an unconditional exemption in settlement proceeds in this case.

The Court finds more persuasive the court's analysis in *In re Launza*, 337 B.R. 286 (Bankr. N.D. Tex. 2005) in which the court adopted the majority view. The facts in *Launza* mirror the facts in the case at bar. One of the debtors sustained a pre-petition injury, and, the lawsuit was properly exempted under § 522(l). *Id*. at 288. No party objected to the exemption of the lawsuit and the debtor settled the lawsuit post-petition, but before confirmation of the debtors' chapter 13 plan. *Id*. The trustee argued that the lawsuit proceeds were disposable income and must be paid to unsecured creditors because the plan paid less than 100% to unsecured creditors. *Id*.

The *Launza* court began it analysis by first deciding if the settlement proceeds were income. Using Black's Law Dictionary, the court noted that the definition of "income" includes gifts and the like. *Id*. The court found that the settlement proceeds are analogous

to gifts; therefore, they are income. *Id*. Further, the debtors did not provide any evidence that the settlement proceeds were reasonably necessary to their maintenance or support, so the court concluded that the settlement proceeds were disposable income. *Id*.

The *Launza* court then acknowledged the reasoning of the minority view and its adherence to the plain language of § 522(c). The court then observed the divergent views regarding the interplay between sections 522(c) and 1325(b). Important in *Launza* was the court's holding that § 1325(b) does not reference § 522(c), and, that the only limitation on disposable income under § 1325(b) is that it is not reasonably necessary to be expended of the debtors' or their dependents' maintenance and support. *Id*. at 290. The court then noted that the majority of courts find under a plain reading of § 1325(b) that disposable income is not limited by its exempt status. *Id*. Therefore, the disposable income requirement is not limited by § 522(c) because § 1325(b) does not reference or state that it is limited by § 522(c). *Id*. Further, *Launza* found persuasive the majority view's determination that exemptions are less significant for chapter 13 debtors and that given the broad discharge afforded debtors in chapter 13, having the debtors pay otherwise exempt income to their creditors furthers the goal of making chapter 13 debtors pay as much as they can to their creditors. *Id*. at 290-91 (citations omitted). The Court agrees with and adopts this analysis.

Finally, the Court finds that once settlement proceeds are defined as income, and, therefore "disposable income" under § 1325(b), the proceeds qualify as projected disposable income. *See Hamilton v. Landing*, 560 U.S. 505 (2010) (holding that when a court calculates a chapter 13 debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually known at the time of confirmation).

8

**CONCLUSION**

The Court will grant the Trustee's Objection to the Debtors' Chapter 13 Plan. Debtors has fourteen (14) days from entry of this Memorandum Opinion and Order to propose a new Chapter 13 Plan or the case shall be dismissed.

IT IS THEREFORE ORDERED that the Trustee's Objection to Confirmation of Chapter 13 Plan GRANTED, subject to the Debtors having fourteen (14) days from entry of this Memorandum Opinion and Order to propose a new chapter 13 plan or the case shall be dismissed.

All other relief is DENIED.

# # #